# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 1:14CR00023 |
| | ) |
| v. | ) **OPINION AND ORDER** |
| | ) |
| BETH PALIN, ET AL., | ) By: James P. Jones |
| | ) United States District Judge |
| Defendants. | ) |

*Janine M. Myatt, Special Assistant United States Attorney, and Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Michael J. Khouri, Khouri Law Firm, Irvine, California, for Defendant Beth Palin; Nancy C. Dickenson, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant Joseph D. Webb.*

The remaining defendants in this criminal case, Beth Palin and Joseph D. Webb, have separately filed motions for judgment of acquittal, or for a new trial in the alternative, challenging their convictions of healthcare fraud and conspiracy to commit healthcare fraud. For the following reasons, I will deny the motions.

I.

The facts of this case are set forth in detail in my earlier opinion stating my findings following a bench trial (Op., Apr. 7, 2016, ECF No. 297) and I will not repeat them here. Palin owned both Mtn. Empire Medical Care LLC ("MEMC"), an addiction medicine clinic, and Bristol Laboratories, LLC ("Bristol Labs"), the lab that processed the urine drug screens ordered for patients of MEMC and

patients of a deceased coconspirator, Charles K. Wagner, M.D. Webb, Palin's husband, was not an owner of the clinic but held himself out as one and was heavily involved in the operation of both MEMC and Bristol Labs. The government alleged and proved, in a nonjury trial, that Palin and Webb devised a scheme to defraud Medicare, two state Medicaid programs, and various private insurers by conducting and billing for urine drug screens that they knew were not medically necessary.

Palin seeks acquittal or a new trial on two grounds: (1) that the Supreme Court's recent decision in *Universal Health Services, Inc. v. United States*, 136 S. Ct. 1989 (2016), altered the applicable law, and (2) that there was insufficient evidence to support her conviction. Webb's post-trial motion asserts that the evidence was insufficient to support his conviction. The motions have been fully briefed and are ripe for decision. I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aide the decisional process.

## II.

"[T]here is only one ground for a motion for judgment of acquittal. This is that the evidence is insufficient to sustain a conviction of one or more of the offenses charged in the indictment or information." *United States v. Hoover-Hankerson*, 406 F. Supp. 2d 76, 81-82 (D.D.C. 2005) (citation omitted), *aff'd*, 511

2

F.3d 164 (D.C. Cir. 2007). "A defendant challenging the sufficiency of the evidence faces 'a heavy burden.'" *United States v. Thorne*, 614 F. App'x 646, 647 (4th Cir. 2015) (unpublished) (quoting *United States v. McLean,* 715 F.3d 129, 137 (4th Cir. 2013)).

On review of a motion for acquittal under Rule 29, the court "must sustain the verdict if there is substantial evidence" to uphold the verdict. *Burks v. United States,* 437 U.S. 1, 17 (1978). In the context of a criminal conviction, the Fourth Circuit has defined substantial evidence as "that evidence which 'a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *United States v. Newsome*, 322 F.3d 328, 333 (4th Cir. 2003) (quoting *United States v. Burgos*, 94 F.3d 849, 862-63 (4th Cir. 1996) (en banc)). The court must consider "circumstantial as well as direct evidence." *United States v. Tresvant,* 677 F.2d 1018, 1021 (4th Cir. 1982).

Federal Rule of Criminal Procedure 33(a) provides, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment." "The issue of whether to grant a new trial is firmly committed to the discretion of the trial court." *United States v. Head*, Nos. 94-5858, 94-5859, 94-5906, 94-5907, 1996 WL 60445, at *2 (4th Cir. Feb. 12, 1996) (unpublished).

3

Because this case was decided by the court after a bench trial, I have already thoroughly reviewed the evidence and concluded that it was sufficient to convict the defendants. Palin argues that there was insufficient evidence of fraud because "the Government failed to provide evidence to the trier of fact of any material lie, misrepresentation, or misleading act or omission." (Def. Beth Palin's Mot. for J. of Acquittal or, In the Alternative, New Trial 15, ECF No. 338.) I disagree with this assessment of the evidence. Palin committed fraud when she developed a scheme by which her subordinates and agents, who were not medical professionals, would order and bill for medically unnecessary urine drug screens that were not used in patient treatment. By submitting claims for payment, Palin misrepresented that the tests had been ordered for individual patients by physicians based on medical necessity, as the insurers required, when in fact the orders were usually completed by non-physician staff members automatically, at Palin's direction, without any individually determined medical need for the tests. The various healthcare benefit programs prohibited Bristol Labs from submitting claims for medically unnecessary services and would not have paid for the urine drug screens had they known the tests were medically unnecessary. That is sufficient evidence to support a conviction of health care fraud. The evidence further showed that Palin entered into an agreement with Webb and Wagner and took acts in

furtherance of that agreement, supporting her conviction of conspiracy to commit health care fraud.

Webb contends that he is entitled to judgment of acquittal because "the government did not prove that Medicare was a health care benefit program affecting commerce as defined in the statute because there was not adequate testimony about commerce." (Renewed Mot. for J. of Acquittal or In the Alternative Mot. for New Trial 1-2, ECF No. 339.) For purposes of the health care fraud statute, a "health care benefit program" is "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." 18 U.S.C. § 24(b). "Courts have interpreted 'affecting commerce' to mean affecting interstate commerce." *United States v. Natale*, 719 F.3d 719, 732 n.5 (7th Cir. 2013). Courts of appeal that have considered challenges like Webb's have found sufficient evidence of interstate commerce where the record showed that: (1) defrauded insurance companies were based out of state and did business throughout the United States, *United States v. Gelin*, 712 F.3d 612, 620 (1st Cir. 2013); (2) the federal government funded 60% of a defrauded state Medicaid program, *United States v. Kpohanu*, 377 F. App'x 519, 523 (6th Cir. 2010) (unpublished); and (3) "the fraud was to Medicaid, a federally funded program that

5

affects commerce," *United States v. Girod*, 646 F.3d 304, 316 (5th Cir. 2011).

Indeed, the Fifth Circuit has stated,

> [I]t cannot seriously be contended that Medicare and Medicaid do not affect commerce. The provision of medical services affects interstate commerce because both physicians and hospitals serve nonresident patients and receive reimbursement through Medicare payments, and the regulated activity in this case substantially affects commerce and is linked to interstate commerce.

*United States v. Ogba*, 526 F.3d 214, 238 (5th Cir. 2008) (internal quotation marks, footnotes, and alterations omitted).

In this case, the evidence showed that MEMC and Bristol Labs, both of which were located in Virginia, served patients who lived in Tennessee and billed insurers that operated in Tennessee and elsewhere. Both Virginia Medicaid and TennCare, the Tennessee Medicaid program, are federally funded, as is Medicare. For the reasons stated by the Fifth Circuit in *Ogba*, I find that the government presented sufficient evidence to show that the defrauded benefit programs affect interstate commerce.

Webb argues that there was insufficient evidence to prove he intended to defraud a health care benefit program. The evidence demonstrated that Webb held himself out to be an owner of MEMC and Bristol Labs, and numerous witnesses testified that they believed he was a co-owner. Webb was heavily involved in recruiting and hiring physicians and counselors, including Dr. Wagner, who later moved his practice next to Bristol Labs. Several witnesses testified that both Palin

6

and Webb were in charge of operations at MEMC and Bristol Labs. One doctor testified that Webb had asked him to take an online course and test so that he could prescribe buprenorphine, and Webb arranged for payment of the course fee. One witness described the Bristol Labs operation as the vision of Palin and Webb, and stated that a predecessor medical clinic called MedPath had been set up under the direction of Palin and Webb. The same witness described a conversation in which he had discussed with Webb the legal implications of Palin and Webb's ownership of both Bristol Labs and MEMC, and Webb indicated that the legality of the relationship was unclear. Another witness testified that Webb had offered to pay her a per-patient referral fee if she could convince the doctors with whom she worked to send urine drug screens to Bristol Labs for processing. Training and marketing materials used by Webb indicate that he was intimately familiar with the operations of Bristol Labs and MEMC, including urine drug screen protocols. A consultant emailed both Palin and Webb to warn them of increased scrutiny of buprenorphine clinics by federal law enforcement and advised that they review their billing and prescribing practices with legal counsel. Mary E. Curtiss, M.D., an addiction medicine practitioner who worked for MEMC and who was charged but acquitted in this case, told a federal agent that Palin and Webb had decided MEMC's fee structure and that MEMC would not accept insurance. An email to Dr. Curtiss strongly suggesting that she drug test all patients twice per week was

7

signed with both Palin and Webb's names. Both of their names were signed to an email to Aaron Miller, M.D., another addiction medicine practitioner who briefly worked for MEMC, in which Palin and Webb asked Dr. Miller to drug screen all of his patients weekly.

Based on all of this evidence, I concluded that Webb possessed the requisite criminal intent to be convicted of health care fraud, as a principal or as an aider and abetter, and that he knowingly joined Palin and Wagner in a conspiracy to commit healthcare fraud. He did not merely conduct innocent marketing activities, nor was he simply a bystander to Palin's unlawful conduct. Rather, he was well aware of the fraudulent scheme, likely developed it on his own or with Palin, actively participated in it, and benefitted from it. He can be held liable for Palin's illegal acts both as an aider and abetter and as a coconspirator. There is sufficient evidence of Webb's intent to support his conviction.[1]

---

[1] Webb asserts that I found Dr. Curtiss not guilty of conspiracy to commit health care fraud "because she utilized the lab results." (Renewed Mot. for J. of Acquittal or In the Alternative Mot. for New Trial 5, ECF No. 339.) I did not acquit Dr. Curtiss simply because she used some of the lab results in her treatment of patients. I found that Dr. Curtiss lacked the requisite criminal intent to be convicted of fraud or conspiracy because she believed the tests ordered were appropriate and medically necessary. Contrary to Dr. Curtiss's belief, I found that weekly testing of all patients by Bristol Labs was not medically necessary. (Op. 20-21, Apr. 7, 2016, ECF No. 297.) Webb argues that because Dr. Wagner passed away prior to trial, we cannot know whether Dr. Wagner had legitimate reasons for ordering urine drug screens, implying that the drug screens of Dr. Wagner's patients may have been medically necessary and that he may not have conspired with Palin and Webb. The evidence showed that Dr. Wagner allowed his non-medically trained staff members to write prescriptions upon request without physician oversight and that he failed to even visit his office for lengthy periods of time. In his

Palin seeks acquittal or a new trial on the ground that after I issued my verdict in this case, the Supreme Court decided *Universal Health Services, Inc. v. United States*, 136 S. Ct. 1989 (2016), in which the Court construed the materiality element of a civil action brought under the False Claims Act, 31 U.S.C. § 3729. The False Claims Act makes a person civilly liable if she, among other things,

> knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

31 U.S.C. § 3729(a)(1)(G). The False Claims Act defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

*Universal Health Services* concerned a theory of liability known as "implied false certification."

> According to this theory, when a defendant submits a claim, it impliedly certifies compliance with all conditions of payment. But if that claim fails to disclose the defendant's violation of a material statutory, regulatory, or contractual requirement, so the theory goes, the defendant has made a misrepresentation that renders the claim "false or fraudulent" under § 3729(a)(1)(A).

136 S. Ct. at 1995. The Court summarized its holdings as follows:

---

absence, his staff and the Bristol Labs staff ordered and billed for urine drug screens that he did not use. There is ample evidence to conclude that Dr. Wagner knew the urine drug screens of his patients were not medically necessary and that he knowingly conspired with Palin and Webb to commit health care fraud.

9

> We first hold that, at least in certain circumstances, the implied false certification theory can be a basis for liability. Specifically, liability can attach when the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement. In these circumstances, liability may attach if the omission renders those representations misleading.
>
> We further hold that False Claims Act liability for failing to disclose violations of legal requirements does not turn upon whether those requirements were expressly designated as conditions of payment. Defendants can be liable for violating requirements even if they were not expressly designated as conditions of payment. Conversely, even when a requirement is expressly designated a condition of payment, not every violation of such a requirement gives rise to liability. What matters is not the label the Government attaches to a requirement, but *whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision*.
>
> *A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act.* We clarify below how that rigorous materiality requirement should be enforced.

*Id.* at 1995–96 (emphasis added). In reaching its conclusions, the Court considered the common law meaning of fraud, which encompasses omissions as well as express falsehoods. *Id.* at 1999.

In *Universal Health Services*, a clinic had submitted claims for counseling services performed by professionals who were not licensed and did not meet licensing requirements. The Court found that the claims submitted "were clearly misleading in context" because "[a]nyone informed that a social worker at a

10

Massachusetts mental health clinic provided a teenage patient with individual counseling services would probably — but wrongly — conclude that the clinic had complied with core Massachusetts Medicaid requirements" regarding qualifications, training, and experience. *Id.* at 2000.

The Court went on to say that "a misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Id.* at 2002.

> A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial.

*Id.* at 2003. Materiality is determined by "'the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'" *Id.* at 2002 (quoting 26 R. Lord, *Williston on Contracts* § 69:12, p. 549 (4th ed. 2003)).

The criminal health care fraud statute under which Palin and Webb were convicted provides, in relevant part:

> (a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—
>
> (1) to defraud any health care benefit program; or
>
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property

11

> owned by, or under the custody or control of, any health care benefit program,
>
> in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1347(a). To obtain a conviction for health care fraud, the government must prove that a defendant:

> (1) knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to defraud; and (3) acted with intent to defraud.

*United States v. Hunt*, 521 F.3d 636, 645 (6th Cir. 2008) (citation omitted). A defendant may be convicted of violating the statute only if the government proves beyond a reasonable doubt that the defendant acted "knowingly and willfully" to defraud insurers. 18 U.S.C. § 1347(a); *McLean*, 715 F.3d at 137. In a case like this one, where the government contends that the defendants ordered and billed for medically unnecessary tests, the government must prove that the defendants knew the tests were unnecessary. *See id*.

Unlike the False Claims Act, § 1347 does not use the term "material," and Palin has cited no case holding that § 1347(a) contains a materiality element.[2]

---

[2] Palin points to jury instructions I gave in 2012 in another criminal case charging health care fraud under § 1347. *United States v. Louthian*, No. 1:12CR00002, Jury Instr. No. 19, ECF No. 187. In that case, I instructed the jury that the government was required to prove that "[a] false statement, misrepresentation, or concealment in furtherance of the scheme was material." *Id.* I also instructed the jury that "[a] statement is 'material' if it

12

Instead, she argues that "[f]raud is fraud," and therefore if the False Claims Act requires a material misrepresentation, then § 1347(a) must also require a material misrepresentation. (Def. Beth Palin's Mot. for J. of Acquittal or, In the Alternative, New Trial 5, n. 1, ECF No. 338.)

The Fourth Circuit has explained then when interpreting § 1347, "we look to the 'common-law understanding of fraud,' which includes 'acts taken to conceal, create a false impression, mislead, or otherwise deceive.'" *United States v. Witasick*, 443 F. App'x 838, 842 (4th Cir. 2011) (unpublished) (quoting *United States v. Colton*, 231 F.3d 890, 898 (4th Cir. 2000)). "Also important to the analysis of common law fraud is whether the defendant 'fraudulently produc[ed] a false impression upon the mind of the other party; and if the result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff.'" *United States v. Beverly*, 284 F. App'x 36, 39 (4th Cir. 2008) (unpublished) (quoting *Colton*, 231 F.3d at 899). This explanation implies that at least if the government's case against a defendant is

---

has a natural tendency to influence, or is capable of influencing, the health care benefit program to which it is directed." *Id.* The source of this instruction is unclear. In the present case, my discussion of the requirements for a conviction under § 1347 did not include any reference to a materiality element. (*See* Op. 27-28, Apr. 7, 2016, ECF No. 297.)

13

based on concealment of facts, the facts concealed or suppressed by the defendant must be "material" in order for a defendant to be convicted under § 1347.

Assuming, without deciding, that the Supreme Court's statements about materiality under the False Claims Act apply to § 1347, the misrepresentations at issue in this case easily satisfy the standard of materiality set forth in *Universal Health Services*. The health care benefit program representatives who testified stated in no uncertain terms that the benefit programs, as a rule, do not pay for medically unnecessary tests. A Medicare regulation specifically excludes from coverage "[a]ny services that are not reasonable and necessary for one of" the enumerated purposes, the most applicable of which is "[f]or the diagnosis or treatment or illness or injury or to improve the functioning of a malformed body member." 42 C.F.R. § 411.15(k). Another Medicare regulation states:

> All diagnostic x-ray tests, diagnostic laboratory tests, and other diagnostic tests must be ordered by the physician who is treating the beneficiary, that is, the physician who furnishes a consultation or treats a beneficiary for a specific medical problem and who uses the results in the management of the beneficiary's specific medical problem. Tests not ordered by the physician who is treating the beneficiary are not reasonable and necessary (see § 411.15(k)(1) of this chapter).

42 C.F.R. § 410.32(a).

It is clear to me, as fact finder, that none of the affected health care benefit programs would have paid the claims submitted by Bristol Labs had they known that the urine drug screens that had been performed were not medically necessary

14

for patient diagnosis or treatment. Contrary to Palin's assertion, there was no evidence in this case that the benefit programs had paid claims for tests that they knew were medically unnecessary. *See Univ. Health Servs.*, 136 S. Ct. at 2003-04 (noting that "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material"). Palin is not entitled to acquittal or a new trial based on the Supreme Court's decision in *Universal Health Services*.

Because the verdicts in this case are supported by substantial evidence and the interests of justice do not require a new trial, I conclude that the defendants are not entitled to post-trial relief.

III.

For the foregoing reasons, it is hereby **ORDERED** that:

1. Defendant Beth Palin's Motion for Judgment of Acquittal or, In the Alternative, New Trial (ECF No. 338) is DENIED; and

2. The Renewed Motion for Judgment of Acquittal or In the Alternative Motion for New Trial (ECF No. 339) is DENIED.

ENTER: August 2, 2016

/s/ James P. Jones  
United States District Judge

15